HINSDALE SANITARIUM & HOSPITAL, Plaintiff-Appellee, v. THE ILLI-
NOIS HEALTH FACILITIES PLANNING BOARD, Defendant-Appellant.

First District (4th Division)   No. 87—0875

Opinion filed March 31, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones
Stewart, Solicitor General, and Karen S. Rosenwinkel, Assistant Attorney
General, of Chicago, of counsel), for appellant.

Brian S. Hucker, Bruce H. Weitzman, and Mark E. Shure, all of McDer-
mott, Will & Emery, of Chicago, for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Hinsdale Sanitarium and Hospital (Hinsdale), submitted an application to the defendant, the Illinois Health Facilities Planning Board (Board), for a certificate of need to construct a new hospital in the Romeoville-Bolingbrook area of Illinois. The Board denied Hinsdale's application. Upon administrative review, the trial court reversed that decision as being against the manifest weight of the evidence. The Board appeals.

Pursuant to the provisions of the Illinois Health Facilities Planning Act, the Board must approve a certificate of need before a hospital can be constructed. (Ill. Rev. Stat. 1975, ch. 111½, par. 1152.) Under the Board's rules, a certificate of need will be given if the applicant establishes that the proposed hospital is needed and that the proposed hospital is both financially and economically feasible. Need can be established by consulting the State Bed Plan, an analysis of computed bed needs issued by the Board, to determine whether it lists a need in the area encompassing the site of the proposed hospital. If the State Bed Plan does not indicate a need, then an applicant must establish that it is entitled to a variance under the Board's rules. Because the State Bed Plan showed an excess of beds in the proposed area, Hinsdale sought to show that it was entitled to a variance under Rule 3.05.2 of the Board's rules.

On recommendation of the Regional Health Systems Agency and the staff of the Board, the Board denied Hinsdale's application. There were three reasons for the denial. First, the project did not conform with the State Bed Plan, which showed an excess of beds in the proposed area. Second, Hinsdale failed to show that it was entitled to a variance from the State Bed Plan. Third, Hinsdale failed to show the economic feasibility of the plan.

Following the initial denial by the Board, Hinsdale requested an "Appeal Fair Hearing" pursuant to the Illinois Health Facilities Planning Act. After receiving testimony and documentary evidence, the hearing officer issued a report which recommended that the Board's staff reexamine the issue of economic feasibility. Significantly, the hearing officer did not recommend a reexamination of the issue of need. Upon further review, the Board again denied Hinsdale's application. The basis of this decision was essentially the same as in the initial denial.

The Board's determination that Hinsdale did not establish that it was entitled to a variance or that the project was economically feasible may be reversed by a reviewing court if the findings of

the Board are against the manifest weight of the evidence. (*Northwest Hospital v. Illinois Health Facilities Planning Board* (1978), 59 Ill. App. 3d 221, 227, 375 N.E.2d 1327, 1332.) A review of the record in the instant case leads us to the conclusion that the trial court was correct in ruling that the Board's decision to deny the plaintiff's application was not supported by the record. A discussion of the evidence which supports our holding follows.

To establish entitlement to a variance under Rule 3.05.2, Hinsdale must establish that the proposed service area is medically underserved and that alternative health care facilities are not available, not accessible, or not acceptable.

Factors to consider in determining if the proposed service area is medically underserved are: (1) unfavorable physician/patient ratio; (2) unfavorable time or distance to the nearest physician or hospital; (3) hospitalization rates reflecting an unfavorable situation; (4) existence of factors adversely affecting medical care, such as unfavorable infant-mortality rate, size of indigent population, lack of medical services for the poor, advanced age of physicians and socio-economic barriers to health care.

Regarding the factor of unfavorable ratio of physicians to population, an expert testified that the ratio of physicians to population of the Romeoville-Bolingbrook area had reached a critical level, as it had fallen below the minimum Federal guidelines for acceptable or even minimal care. The Board presented no evidence to the contrary and conceded that the physician/patient ratio is below average. Further, uncontradicted testimony was heard to show that the construction of the proposed hospital would help to alleviate the unfavorable ratio problem.

Regarding the factor of unfavorable time or distance to the nearest physician or hospital, uncontradicted evidence was presented showing that the residents of the Romeoville-Bolingbrook area must travel approximately 30 minutes or more, even under good conditions, to seek health care. Evidence was also presented which showed that residents of the Romeoville-Bolingbrook area often encounter difficulty in getting to or being transported to surrounding hospitals. The area contains no public transportation system and a limited ambulance service which is often unavailable.

Regarding the factor of favorability of hospitalization rates, the evidence shows that although 71.4% of the residents in the proposed service area who need in-patient care are hospitalized, these residents must scatter to one of five surrounding hospitals because there are no hospital facilities in the proposed service area.

Regarding the existence of factors which adversely affect medical care, Hinsdale presented evidence on a variety of factors which exist in the area that are socio-economic barriers to obtaining health care. Evidence was presented from a physicians' survey which indicated that, of those physicians responding to the survey, 35.7% were foreign medical school graduates. An expert testified that foreign medical school graduates are extremely transient and that they provide a lower standard of care than other doctors. The Board did not present any evidence to the contrary.

As noted above, in order to comply with the requirements of variance Rule 3.05.2, the proposed project must not only provide care to a medically underserved population group, there must also be a showing that alternative sources or arrangements for such care are either not available, not accessible or not acceptable to the group concerned. Although the Rule 3.05.2 requirement can be satisfied by showing unavailability, unaccessibility *or* unacceptability, Hinsdale presented evidence on each of these points.

Regarding acceptability, an expert defined acceptability as whether the population in question wants to use the health-care facility and finds it relatively easy to do so. The evidence was uncontradicted that the residents of the Romeoville-Bolingbrook area support the construction of a new hospital. It was not Hinsdale Hospital but village officials and residents from Romeoville-Bolingbrook who decided that a hospital was needed and who approached Hinsdale Hospital to construct the facility.

In addition, the evidence is uncontroverted that the residents of the Romeoville-Bolingbrook area consistently reject the hospitals in the Joliet area despite the fact that the excess of beds are located at that hospital. The evidence showed that 78.4% of the Romeoville-Bolingbrook area residents travel out of the Joliet area to obtain health care.

As the only support for its conclusion that alternative facilities are acceptable to the proposed service area, the Board argues that 71.4% of the residents utilize five hospitals within a 10-mile radius of the proposed service area. Hinsdale points out that this simple statistic does not show the acceptability of existing health-care facilities; rather, it simply represents an aggregation of citizens who have used hospitals to receive treatment. Further, the statistics show that only 22.6% of the residents of the proposed area utilize the Joliet health facilities despite the fact that the hospital is the only one in the area with excess beds and despite the fact that the other hospitals are overcrowded.

Hinsdale also presented substantial evidence showing that no alternative hospitals were readily available or accessible to the residents of the Romeoville-Bolingbrook area. Only five hospitals are even close to being within a 30-minute driving time. Testimony was presented which supports the conclusions that travel time to alternate hospitals exceeds 30 minutes under optimal conditions. Further, the evidence in the record shows that the two hospitals which were supposed to provide emergency care because they were within 15 minutes of the area by ambulance have special accessibility problems. These two hospitals are Edward Hospital, located in Naperville, and Hinsdale Hospital. Uncontested testimony showed that Edward Hospital is overcrowded and is so hard-pressed that in the past it has informed Romeoville-Bolingbrook officials not to transport emergency patients to its facilities. Hinsdale Hospital is itself fully utilized. Further, evidence showed that the ambulance delay to Edward and Hinsdale Hospitals is a life-threatening condition. The total turnaround time for an ambulance to Edward or Hinsdale Hospital has approached 1½ to more than three hours in the past. There have been numerous occasions where no ambulances were available to service the emergency needs of the Romeoville-Bolingbrook citizens.

There is a dispute between the Board and Hinsdale as to whether a 30-minute accessibility standard or 20-minute accessibility standard should be used. Hinsdale argues that no such 30-minute standard was used in Illinois before Hinsdale Hospital submitted its application. We note that even under the 30-minute standard, the undisputed evidence shows that none of the five hospitals are accessible. The evidence shows that travel time is 30 minutes or more even under the best of road and weather conditions.

■ As noted above, in addition to showing the proposed hospital's needs, Hinsdale Hospital was also required to show that the proposed hospital was both financially and economically feasible. On appeal, the Board does not contest that Hinsdale Hospital showed that the project was financially feasible. It does contend, however, that Hinsdale Hospital failed to establish that the project was economically feasible. The trial court found that the Board's "adverse determination as to economic feasibility should be rejected." We agree with the trial court.

Under Board Rule 11.01.2, economic feasibility is defined as a finding by the State Board that society can reasonably pay the costs resulting from the construction of the new facility. Under the applicable rules, the Board looks to three criteria: (1) the appropriateness of capital financing arrangements; (2) reasonableness of project cost;

and (3) economy of resultant operating costs.

The evidence in the record indicates that substantial savings in the cost of health-care delivery will be made through the affiliation of the proposed facility with Hinsdale Hospital. Major expense items will be shared. Private money rather than tax revenues will be used. The Board's only witness stated that the project cost was reasonable. Further, the Board concedes that construction of the proposed hospital will result in savings to consumers who are now required to go out of the service area to obtain treatment.

The trial court correctly pointed out that the evidence in the record as to economic feasibility is conflicting inasmuch as the Board's witness testified that the cost to be assessed by a Romeoville-Bolingbrook hospital will exceed costs charged by surrounding hospitals, while Hinsdale's witness testified that the costs to be assessed will be competitive with surrounding hospitals. However, the record indicates that the testimony of the Board's witness was based largely on figures taken from a report which was not admitted into evidence by the hearing officer because the hearing officer found that there was insufficient foundation for the document.

In conclusion the Board's determination that Hinsdale failed to show that the proposed hospital is both needed and economically feasible is against the manifest weight of the evidence. Therefore, the decision of the trial court reversing the order of the Illinois Health Facilities Planning Board denying the application of Hinsdale for a certificate of need is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.